UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DONGGUAN     BEST     TRAVEL §
ELECTRONICS CO., LTD.,           §
*Plaintiff*                       §
                                 §       Case No.  SA-26-CA-00563-XR
v.                               §
                                 §
THE       PARTNERSHIPS      AND §
UNINCORPORATED   ASSOCIATIONS §
IDENTIFIED ON SCHEDULE A,        §
*Defendants*                      §

## ORDER

On this date, the court considered Plaintiff Dongguan Best Travel Electronics Co., LTD.'s

Motion for a Temporary Restraining Order (ECF No. 7) and Motion for Alternative Service (ECF

No. 5).  After careful consideration, the Motion for a Temporary Restraining Order (ECF No. 7)

is **DENIED**, and the Motion for Alternative Service (ECF No. 5) is **GRANTED.**

## BACKGROUND

Plaintiff Dongguan Best Travel Electronics Co., LTD. owns U.S. Patent No. 12,199,387,

which is for "an overload prevention device for a multi-country power converter."  ECF No. 1-1

at 18.  A "power converter" is essentially an adaptor that allows a user to plug their electronics

into different countries' power outlets.  The Patent acknowledges in its "Background Art" section

that "there are power converters available on the market that can be applied to different national

socket standards" and that some of those converters include "fuse tube[s]" to improve safety.  *Id.*

Neither the Complaint nor the Motion for a Temporary Restraining Order explains what

differentiates the Patent from other multi-country power convertors, which—again—it identifies

as prior art.  Given the early stage of this litigation and the lack of evidence on the subject, the

Court will not attempt a comprehensive explanation of the Patent.  For purposes of this Order, it

1

is enough to say that the Patent is seemingly meant to provide "smooth" conduction; address certain safety concerns, including "electrical leakage" and electric shock; and make it more difficult to remove the "fuse tube" from the power converter when it is in use. *Id.*

Plaintiff alleges that Defendants—who are merchants on e-commerce platforms—sell products that infringe the Patent. ECF No. 1 ¶ 3–4. Defendants allegedly "share unique identifiers establishing a logical relationship between them," which Plaintiff says "suggest[s] that Defendants' operation arises out of the same transaction, occurrence, or series of transactions or occurrences." ECF No. ¶¶ 4, 20.

Defendants are allegedly located "in the People's Republic of China or other foreign jurisdictions with lax intellectual property enforcement systems." ECF No. 1 ¶ 16. They "go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of online marketplaces and user accounts." ECF No. 1 ¶ 19. Further, infringers like Defendants allegedly often engage in various tactics to avoid detection and enforcement, including registering new accounts, moving money around, and maintaining off-shore bank accounts. ECF No. 1 ¶¶ 21–23.

Plaintiff filed this case on January 30, 2026. ECF No. 1. On the same day, it filed *ex parte* motions for a Temporary Restraining Order (ECF No. 7), Alternative Service (ECF No. 5), and to file certain documents under seal pending this Court's decision on the Motion for a Temporary Restraining Order (ECF Nos. 2, 8). The Court allowed the filing of the documents under seal, Text Orders Dated February 2, 2026, and now decides the other two motions.

## DISCUSSION

### I.     Motion for a Temporary Restraining Order

The Court first considers Plaintiff's Motion for a Temporary Restraining Order (ECF No. 7).  Because Plaintiff has failed to show a likelihood of irreparable harm, that motion is **DENIED.**

a.  <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 65, a Court may grant a temporary restraining order *ex parte*.  *Ex parte* restraining orders should be limited to preserving the status quo only as long as necessary to hold a preliminary injunction hearing.  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).  A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.  FED. R. CIV. P. 65(b).

The factors that govern an application for a temporary restraining order are the same as those that govern a request for a preliminary injunction.  *Hill v. Green Cnty. Sch. Dist.*, 848 F. Supp. 697, 703 (S.D. Miss. 1994) (citing *Canal Authority of State of Fl. v. Callaway*, 489 F.2d 567 (5th Cir.1974)).  In the patent context, courts determine whether to grant "a preliminary injunction according to the law of the regional circuit, . . . except for patent-specific issues, which" are decided "according to Federal Circuit law." *Incyte Corp. v. Sun Pharm. Indus., Ltd.*, 135 F.4th 1381, 1383 (Fed. Cir. 2025).

The movant must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). To determine the likelihood of success on the merits, the Court looks to the standards provided by the substantive law. *See Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir.1985). The substantive prerequisites for obtaining an equitable remedy as well as the general availability of injunctive relief are not altered by Rule 65 and depend on traditional principles of equity jurisdiction. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999).

b. Analysis

Because Plaintiff has not shown a likelihood of irreparable harm absent a temporary restraining order, the Court begins and ends its analysis with that element.[1] "A party seeking a preliminary injunction must show it is likely to suffer irreparable harm if the injunction is not granted and establish a causal nexus between the alleged infringement and the alleged harm." *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1378 (Fed. Cir. 2024). To demonstrate irreparable harm, a plaintiff must show that "remedies available at law, such as monetary damages, are inadequate to compensate for th[eir] injury." *Robert Bosch*, 659 F.3d at 1148 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "Price erosion, loss of goodwill, damage

---

[1] The Federal Circuit used to "appl[y] an express presumption of irreparable harm upon finding that a plaintiff was likely to succeed on the merits of a patent infringement claim." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011). But that presumption no longer applies, *id.* at 1149, so the Court need not address the likelihood of success on the merits or the presumption.

to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).

Plaintiff asserts that Defendants' infringement will cause irreparable harm by (1) damaging Plaintiff's reputation and causing loss of customer goodwill, (2) causing price erosion, and (3) forcing Plaintiff to compete with an infringer of its patent. *See* ECF No. 7 at 10. Plaintiff also asserts that Defendants are unlikely to pay a money judgment, since they are "upon information and belief" located in the "foreign jurisdictions with no U.S. presence." ECF No. 7 at 12.

### 1. Reputational Harm, Customer Goodwill, and Customer Confusion

Plaintiff first says that "Defendants' infringement  is likely to cause consumer confusion with genuine products from Plaintiff, resulting in harm to Plaintiff's reputation and loss of customers' goodwill." ECF No. 7 at 11. "Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable." *Reebok*, 32 F.3d at 1558. But Plaintiff has not shown (1) that Defendants' products are "inferior" or (2) that confusion is likely here. It does not, for example, provide evidence that consumers have actually confused the products, *see Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1201 (Fed. Cir. 2017) (pointing to evidence of actual confusion), or even explain why the the allegedly infringing products would cause confusion. A patentholder can, of course, sometimes show that reputational harm is likely even without customer confusion, *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013), but Plaintiff has not done so.

### 2. Price Erosion

Next, Plaintiff says Defendants' alleged infringement will cause "price erosion." ECF No. 7 at 10. But, again, Plaintiff provides no meaningful evidence on this point. It notes that

Defendants can undercut Plaintiff's prices by free-riding on Plaintiff's invention and avoiding the costs associated with getting the Patent. *Id.* But if that were enough to establish irreparable harm, virtually every patent plaintiff could do so. "Such a rule would convert the 'extraordinary' relief of a preliminary injunction into a standard remedy, available whenever the plaintiff has shown a likelihood of success on the merits." *Eli Lilly & Co. v. Am. Cyanamid Co.,* 82 F.3d 1568, 1578 (Fed. Cir. 1996); *see also Reebok*, 32 F.3d at 1558 ("Application of a concept that *every* patentee is *always* irreparably harmed by an alleged infringer's pretrial sales would . . . disserve the patent system." (quoting *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990)). Further, price erosion is not inherently irreparable. *See Altana Pharma AG v. Teva Pharms. USA, Inc.*, 532 F. Supp. 2d 666, 683–84 (D.N.J. 2007), *aff'd,* 566 F.3d 999 (Fed. Cir. 2009).

Plaintiff also has not shown that any price erosion that might occur has a causal nexus to Defendants' alleged infringement. The Patent acknowledges that there are non-infringing power converters on the market. ECF No. 1-1 at 18. "[T]he presence of additional competitors, without more," does not "cut[] against a finding of irreparable harm." *Robert Bosch*, 659 F.3d at 1152. But it also does not excuse Plaintiff from showing a causal nexus between the purported irreparable harm and the alleged infringement. *Natera*, 106 F.4th at 1378. It is not self-evident that the patented feature drives demand for Defendants' products or that Plaintiff could—despite the presence of other, non-infringing power converters on the market—charge more if Defendants stopped their allegedly infringing activities. So Plaintiff has not established a causal nexus between Defendants' alleged infringement and any price erosion. *Cf. Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012) ("Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented

feature. If the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product.").

### 3. Direct Competition

Plaintiff also argues that it is likely to experience irreparable harm because it will be forced to directly compete with Defendants. "Direct competition in the same market is certainly *one factor* suggesting strongly the potential for irreparable harm without enforcement of the right to exclude." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) (emphasis added). But it is not inherently decisive. *See id.*; *Natera*, 106 F.4th at 1397–98. "[L]ost sales standing alone are insufficient to prove irreparable harm." *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 300 (Fed. Cir. 2009) (citing *Abbott Lab'ys v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006)). Because Plaintiff's "direct competition" argument relies only on lost sales, that argument fails.

Further, as in its price erosion argument, Plaintiff has not shown a causal nexus between the alleged infringement and any lost sales, because it has not shown that the patented feature drives sales of the allegedly infringing products. *See Apple*, 678 F.3d at 1324.

### 4. Defendants' Likelihood to Pay a Money Judgment

Finally, Plaintiff alleges "upon information and belief" that Defendants "reside in the People's Republic of China and other foreign jurisdictions with no U.S. presence" and that as a result "any monetary judgment is likely uncollectable." ECF No. 7 at 12. "Though this factor weighs in favor of injunctive relief," Plaintiff "has made no more than a conclusory allegation of this being so." *Ningbo Ningshing Ubay Supply Chain Co. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 23 C 15775, 2024 WL 4252808, at *5 (N.D. Ill. Sept. 20, 2024). That is not enough to show likelihood of irreparable harm.

7

Plaintiff's motion for a Temporary Restraining Order (ECF No. 7) is **DENIED.**

## II.      Motion for Alternative Service

The Court next considers Plaintiff's Motion for Alternative Service (ECF No. 5).  Plaintiff moves for leave to serve Defendants with the Summons and Complaint, and with future filings, by electronic mail.  After careful consideration, this Motion is **GRANTED**.

"Federal Rule of Civil Procedure 4(f)(3) permits a district court to order an alternate method for service to be effected upon foreign defendants, provided it is not prohibited by international agreement and is reasonably calculated to give notice to the defendants."  *BVE Brands, LLC v. Individuals Identified on Schedule "A"*, No. 1:22-CV-00278 RP, 2022 WL 5571495, at *1 (W.D. Tex. Apr. 21, 2022) (citing *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018)).  "A party seeking authorization for alternate service under Rule 4(f)(3) need not attempt service by the methods enumerated under subsections (f)(1) and (f)(2) before petitioning the Court for 4(f)(3) relief."  *Id.* (collecting cases).  And "[t]he decision to accept or deny service by alternate means pursuant to Rule 4(f)(3) falls soundly within the discretion of the district court."  *Id.* (collecting cases).

Service by email is not prohibited by international agreement.  *Id.* at *1–2.  It also does not offend due process here and may, in fact, be the "most likely means of communication to reach Defendants, who operate via the internet and rely on electronic communications for the operation of their businesses."  *Id.*  (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002)).

Plaintiff may serve Defendants by electronic mail under Rule 4(f)(3).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Temporary Restraining Order (ECF No. 7) is **DENIED**, and Plaintiff's Motion for Alternative Service (ECF No. 5) is **GRANTED.**

Plaintiff may serve Defendants by electronic mail, pursuant to Federal Rule of Civil Procedure 4(f)(3).

Because Plaintiff's Motion for a Temporary Restraining Order is denied, the Clerk is **DIRECTED** to **UNSEAL** ECF No. 10, which was filed under seal to avoid putting Defendants on notice of this suit before the Court ruled on the Motion for a Temporary Restraining Order.

It is so **ORDERED**.

**SIGNED** this 24th day of February, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE